# In the United States Court of Federal Claims
## Bid Protest

FILED
FEB 2 6 2007
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PROTECTION STRATEGIES, INCORPORATED, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-125-C |
| | ) | Judge |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to RCFC 65(a)(1), Protection Strategies, Incorporated (Protection Strategies), a Virginia corporation and a small and service-disabled veteran-owned diversified security support services business, Plaintiff herein, hereby Moves for a Preliminary Injunction precluding Defendant and, more particularly, the United States Department of Energy's National Nuclear Security Administration's Service Center, South Campus-4, Kirtland Air Force Base, New Mexico (DoE) from proceeding with the Contract proposed by Solicitation Number DE-RP52-05NA99344

that has been awarded to PAI Corporation, 116 Milan Way, Oak Ridge, Tennessee 37830-6913 (PAI).

In support of this Motion for a Preliminary Injunction, Protection Strategies shows to the Court:

A. The Contract proposed by Solicitation Number DE-RP52-05NA99344 is new. Support services are currently being provided by a large business security support services Contractor for the Nevada Test Site. Support services are to be delivered from DoE-furnished facilities at the Nevada Site Office and at the Nevada Test Site. DoE will furnish computers, communications equipment, vehicles, office supplies, and office services. DoE will also furnish administrative office space.

B. Offerors are required to identify 4 specific Key Persons: a Program Manager, a Vulnerability Assessments Manager, an Operational Security Manager, and a Site Safeguards and Security Plan Manager. These specific Key Personnel are to be delivered upon Contract Award, and they are to perform support services onsite.

All these Key Personnel (and some other support services personnel as well) are to hold current DoE "Q" security clearances. The DoE "Q" security clearance is equivalent to a Department of Defense "Top Secret" clearance.

The proposed Program Manager is "considered significantly more important and will be given more weight in the evaluation than any other key personnel."

Offerors are to demonstrate each proposed Key Person's availability and commitment to accept employment in the position proposed at an agreed-upon salary and benefits package, this with resumes and signed and dated letters of commitment. Offerors are also to describe their "plan for retaining proposed Key Personnel."

DoE says that it will evaluate proposed Key Personnel on "their qualifications, currency and relevancy of experience, attainment of advanced degrees in related disciplines, and demonstrated technical expertise, in the specific positions for which they are proposed." "Currency and relevancy of experience is significantly more important than education."

C. PAI has not delivered any one of the Key Persons identified in PAI's Competitive Proposal. PAI found a replacement Program Manager after Contract Award and he assumed his position some 2 weeks after Contract start-up. PAI has announced that it may take up to a year before PAI can deliver a Vulnerability Assessments Manager.

PAI has initiated an inventory of accountable documents; however, this inventory has not been completed. Until this inventory has been completed and custody of the

accountable documents transferred to PAI, the initial survey of the Contract as required by DoE Directives cannot be conducted. Additionally, the incumbent large business security support services Contractor for the Nevada Test Site must be surveyed to assure all functions and classified material has been properly accounted-for and transferred to PAI.

Because of a lack of PAI personnel who are DoE "Q" cleared and qualified, PAI has been unable to assume responsibility for management and oversight of the Vulnerability Assessments Laboratory.

D. PAI proposed Key Personnel that PAI never intended to provide onsite.

E. DoE ignored evidence that should have made it aware of PAI's misrepresentations.

F. Through DoE's indifference after Contract Award to PAI's failure to deliver promised Key Personnel, DoE has failed to obtain the full and open competition required by 41 U.S.C. § 253(a)(1)(A), this because DoE has tainted the process by which the Contract was awarded. *Planning Research Corp. v. United States*, 971 F.2d 736, 740-41 (Fed. Cir. 1992).

In order to obtain this Preliminary Injunction enjoining DoE from proceeding with the Contract proposed by Solicitation Number DE-RP52-05NA99344 that has been awarded to PAI, Protection Strategies must clearly show: (a) a likelihood of success on the merits, (b) that the harm to Protection Strategies outweighs the harm to DoE, (c) that the public interest is served by enjoining DoE, and (d) irreparable injury to Protection Strategies if DoE is not enjoined, including, but not limited to, the absence of an adequate remedy at law for Protection Strategies. *See, e.g., Delbert Wheeler Construction, Inc. v. United States*, 39 Fed. Cl. 239, 251 (1997), *aff'd*, 155 F.3d 566 (Fed. Cir. 1998).

Because PAI proposed Key Personnel that PAI never intended to provide onsite PAI is not a "responsible contractor" just as that term is defined in 41 U.S.C. § 259-(c)(5) and 41 U.S.C. § 403(7)(E). And a Contract award such as this one, an Award that has not been made to a "responsible contractor" as is required by 41 U.S.C. § 253b(d)(3), is a Contract award which is arbitrary, capricious, and otherwise contrary to law. *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 714 (2006). Success on the merits here is beyond likely—instead, it is obvious.

The balance of hardships leans in Protection Strategies' favor—day-to-day Security Support Services are currently being provided by the large business security support services Contractor for the Nevada Test Site. And immediate requirements for Security Support Services at the Nevada Site Office and at the Nevada Test Site have already been satisfied: in March 2006 Protection Strategies re-wrote the existing Site Safeguards and Security Plan for the Nevada Site Office, and this using new DoE Standards. As well, in June 2006 Protection Strategies completed a baseline Vulnerability Assessment for the Nevada Test Site Device Assembly Facility, and Protection Strategies completed a preliminary Vulnerability Assessment for the programmed Critical Experiment Facility. Protection Strategies was tasked to provide these Security Support Services because of the delay in Award of the Contract proposed by Solicitation Number DE-RP52-05NA99344.

The public interest will be served and, indeed, commands granting the requested Preliminary Injunction:

> In the instant case, the public's interest likewise lies in preserving the integrity of the competitive process . . . .

*Reilly's Wholesale Produce*, 73 Fed. Cl., at 716.

So too here. DoE is better served by this Court commanding DoE not to continue to throw time and money towards remedying PAI's misrepresentations.

And any disruption that has so far occurred results from these misrepresentations, misrepresentations that are PAI's alone.

Irreparable injury? Protection Strategies cannot compete for any continuation of these Security Support Services until December 2011, when the Contract proposed by Solicitation Number DE-RP52-05NA99344 expires by its terms. Such a lost opportunity to compete, and the competitive advantage which will accrue to PAI through performing the Contract proposed by Solicitation Number DE-RP52-05NA99344, is sufficient. *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 664 (2003).

Respectfully submitted,

Cyrus E. Phillips, IV
District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
February 26th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Protection Strategies, Incorporated.