# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Bid Protest
Number 07-125C
Judge Margaret M. Sweeney

**PROTECTION STRATEGIES, INCORPORATED,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

## PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Cyrus E. Phillips, IV
1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Attorney of record for Plaintiff,
Protection Strategies, Incorporated.

AGREED-UPON REDACTED COPY —
MAY BE MADE PUBLIC

March 7th, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

QUESTIONS INVOLVED .......... 1

I. DID THE AWARDEE OF THE PROPOSED SECURITY SYSTEM SERVICES CONTRACT REPRESENT IN ITS COMPETITIVE PROPOSAL THAT THE AWARDEE WOULD RELY ON CERTAIN SPECIFIED PERSONNEL TO PERFORM THE SERVICES? .......... 1

II. DID DEFENDANT RELY ON THIS REPRESENTATION IN EVALUATING THE COMPETITIVE PROPOSALS? .......... 1

III. WAS IT FORESEEABLE THAT THE PERSONS NAMED IN THE AWARDEE'S COMPETITIVE PROPOSAL WOULD NOT BE AVAILABLE TO PERFORM THE SERVICES? .......... 1

IV. ARE PERSONNEL OTHER THAN THOSE PROPOSED BY THE AWARDEE PERFORMING THE SERVICES? .......... 1

STATEMENT OF THE CASE .......... 1-10

ARGUMENT .......... 10-12

I. PROTECTION STRATEGIES IS ENTITLED TO PRESUME THAT DOE'S EVALUATION OF PAI'S PROPOSED KEY PERSONNEL WAS THOROUGH AND COMPLETE. .......... 10-11

II. PAI HAS KNOWINGLY PROPOSED A KEY PERSON THAT WOULD NOT BE AVAILABLE TO PERFORM THE SECURITY SYSTEM SERVICES CONTRACT, AND DOING SO, PAI HAS ENGAGED IN AN UNLAWFUL BAIT-AND-SWITCH .......... 11-12

CONCLUSION .......... 12-13

CERTIFICATE OF SERVICE .......................................................................... 14

# TABLE OF AUTHORITIES

**STATUTES**

28 U.S.C. § 451 . . . . . 2

28 U.S.C. § 1491(b)(1) . . . . . 2

41 U.S.C. § 253b(e)(1) . . . . . 8

42 U.S.C. § 7131 . . . . . 2

42 U.S.C. § 7256(a) . . . . . 2

**CASES**

*Consolidated Engineering Services, Inc. v. United States*, 64 Fed. Cl. 617 (2005) . . . . . 11

*Hewlett-Packard Co. v. United States*, 41 Fed. Cl. 99 (1998) . . . . . 2

*In re Informatics, Inc.*, B-188566, 57 Comp. Gen. 217 (1978) . . . . . 12

*Microdyne Outsourcing, Inc. v. United States*, 72 Fed. Cl. 694 (2006) . . . . . 10

*Orion International Technologies v. United States*, 66 Fed. Cl. 569 (2005) . . . . . 11

*Planning Research Corporation v. United States*, 971 F.2d 736 (Fed. Cir. 1992) . . . . . 12

*Seattle Security Services, Inc. v. United States*, 45 Fed. Cl. 560 (1999) . . . . . 10

# PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## QUESTIONS INVOLVED

I. Did the Awardee of the proposed Security System Services Contract represent in its Competitive Proposal that the Awardee would rely on certain specified personnel to perform the services?

II. Did Defendant rely on this representation in evaluating the Competitive Proposals?

III. Was it foreseeable that the persons named in the Awardee's Competitive Proposal would not be available to perform the services?

IV. Are personnel other than those proposed by the Awardee performing the services?

## STATEMENT OF THE CASE

### PARTIES

Protection Strategies, Incorporated (Protection Strategies) is a closely-held Virginia corporation and a small and service-disabled veteran-owned diversified security support services business founded in 1998, now with overseas operations and personnel on the ground in Iraq and Afghanistan. Attachment 1.

Defendant is the United States Department of Energy's (DoE's) National Nuclear Security Administration's Service Center, South Campus-4, Kirtland Air Force Base, New Mexico. DoE is an Executive Department. 42 U.S.C. § 7131. DoE has the authority to enter into and administer Contracts. 42 U.S.C. § 7256(a). DoE is an "agency" just as that term is defined in 28 U.S.C. § 451, and thus DoE is also a "Federal agency" as is required by 28 U.S.C. § 1491(b)(1). *Hewlett-Packard Co. v. United States*, 41 Fed. Cl. 99, 103 (1998).

PAI Corporation (PAI) is a Tennessee corporation and, purportedly, is a small and Asian-Pacific American woman-owned business. Attachment 2.

BACKGROUND

The proposed Security System Services Contract requires delivery of support services at the National Nuclear Security Administration's Nevada Site Office, North Las Vegas, Nevada and at the Nevada Test Site, a 1,375 square mile Federal reservation located in Nye County, Nevada.

The Contract proposed by Solicitation Number DE-RP52-05NA99344 requires support services in 8 major areas: (1) perform Vulnerability Assessments, (2) provide Operational Security Support, (3) prepare Site Safeguards and Security Plans, (4) provide Security Classification Administrative Support, (5) provide physical fitness training for the guard force, (6) provide Classified Matter staffing and administrative support, (7) operate the pass and badging system; and (8) deliver other security support services including providing an Intranet Website, providing security briefings and preparing security education and awareness media, maintaining and updating security education and

training records, and performing Safeguards and Security professional training for personnel at the Nevada Site Office and for the Nevada Test Site. Attachment 3, pages 1 through 2 of 7.

The proposed Contract is new. Onsite security services are currently being provided by a large business security support services Contractor, Wackenhut Services, Incorporated. The Contract for these onsite security services was awarded as a result of a full and open competition that commenced in 2004. Attachment 3, page 2 of 7. The proposed Contract is only for the administrative functions that are required for these security services.

Security System Services are to be delivered from DoE-furnished facilities at the Nevada Site Office and at the Nevada Test Site. DoE will furnish computers, communications equipment, vehicles, office supplies, and office services. DoE will also furnish administrative office space.

Solicitation Number DE-RP52-05NA99344 was issued on April 18th, 2005 as a total small business set-aside. The due date for initial Competitive Proposals was July 7th, 2005. A Competitive Range was established more than a year later, on September 22nd, 2006. Revised Competitive Proposals were received on October 6th, 2006. DoE issued additional discussion questions on November 2nd, 2006 and Final Proposal revisions were received on November 9th, 2006. Attachment 3, page 2 of 7.

DoE estimates that the full-time services of 33 people are required: a Program Manager; 3 people to perform Vulnerability Assessments; 9 people to provide Operational Security Support, to research, develop, draft and prepare local classification guides, to staff and maintain the Classified Matter Con-

**Protected Information Has Been Redacted**

trol Center vault-type room, and to deliver other security support; 3 people to support preparation and annual review/revision of the Site Safeguards and Security Plan; 12 people to provide physical fitness training for the guard force; and 5 people to operate the pass and badging systems and to maintain and update the Automated Access Control System database. Attachment 4, page 1 of 2.

### Key Personnel Requirement

The proposed Security System Services Contract requires delivery of 4 specific Key Persons and Statement of Work specialists: a Program Manager, a Vulnerability Assessments Manager, an Operational Security Manager, and a Site Safeguards and Security Plan Manager. Attachment 5, Section I.10. These people are to perform onsite at the completion of a 3-week transition period. Attachment 6, Section F.02.

All these Key Personnel (and some other support services personnel as well) are to hold current DoE "Q" security clearances. Attachment 7. The DoE "Q" security clearance is equivalent to a Department of Defense "Top Secret" security clearance.

Solicitation Number DE-RP52-05NA99344 sets out explicit requirements for Competitive Proposal content regarding Key Personnel:

> The Offeror's proposal shall demonstrate that its proposed key personnel for this contract are highly qualified, and demonstrate the ability to effectively manage a program of the nature, size and scope of the work required in the SOW. The Offeror's key personnel will be evaluated on their qualifications, currency and relevancy of experience, attainment of advanced degrees in related disciplines, and demonstrated technical expertise, in the specific positions for which they are proposed. Currency and relevancy of experience is significantly more important than education. The Program Manager is consid-

**Protected Information Has Been Redacted**

> ered significantly more important and will be given more weight in the evaluation than any other key personnel. The availability and commitment of each of the Offeror's key personnel to accept employment in the positions proposed (at an agreed upon salary and benefits package) must be demonstrated by submitting signed and dated letters of commitment, and resumes demonstrating how the proposed personnel meet the experience and qualifications specified. Failure to submit such resumes and letters of commitment may result in an unsatisfactory rating.

Attachment 8, Section L.16(b)(1).

This is what Solicitation Number DE-RP52-05NA99344 says about DoE's evaluation of proposed Key Personnel:

> It is expected that the Offeror's proposed key personnel for this contract are highly qualified, and demonstrate the ability to effectively manage a program of the nature, size and scope of the work required in the SOW. The Offeror's key personnel will be evaluated on their qualifications, currency and relevancy of experience, attainment of advanced degrees in related disciplines, and demonstrated technical expertise, in the specific positions for which they are proposed. Currency and relevancy of experience is significantly more important than education. The Program Manager is considered significantly more important and will be given more weight in the evaluation than any other key personnel. The availability and commitment of each of the Offeror's key personnel to accept employment in the positions proposed (at an agreed upon salary and benefits package) must be demonstrated by submitting signed and dated letters of commitment, and resumes demonstrating how the proposed personnel meet the experience and qualifications specified. Failure to submit such resumes and letters of commitment may result in an unsatisfactory rating.

Attachment 9, Section M.04(a)(1).

PROTECTION STRATEGIES' COMPETITIVE PROPOSAL

Protection Strategies has provided Site Safeguards and Security Plans, Vulnerability Assessments, and Operational Security Support to DoE and Protection Strategies explained so in its initial Compe-

titive Proposal of July 7th, 2005. Protection Strategies holds DoE "Q" and Department of Defense "Top Secret" facility clearances. All Protection Strategies technical personnel hold a DoE "Q" and/or a Department of Defense "Top Secret" security clearance. All Protection Strategies technical personnel have prior military and/or law enforcement backgrounds. Protection Strategies has past performances for DoE, for the United States Department of State, for the Department of Defense, and for the Intelligence Community. Attachment 10.

In March 2006 Protection Strategies re-wrote the existing Site Safeguards and Security Plan for the Nevada Site Office, and this using new DoE Standards. Protection Strategies delivered these support services under Task Order Number DE-AT52-06NA26366 dated March 15th, 2006. Attachment 11. As well, in June 2006 Protection Strategies completed a baseline Vulnerability Assessment for the Nevada Test Site Device Assembly Facility, and Protection Strategies completed a preliminary Vulnerability Assessment for the programmed Critical Experiment Facility. Protection Strategies delivered these additional support services under Modification Number A002 dated June 2nd, 2006. Attachment 12. Protection Strategies was tasked to provide these Security Support Services because of a delay in Award of the proposed Security System Services Contract.

Protection Strategies submitted a Final Proposal Revision on October 6th, 2006. With this Final Proposal Revision Protection Strategies provided Key Personnel resumes and commitment letters for the following: Bruce Rogers, Project Manager; Robert Leonard, Site Safeguards and Security Plan

Manager; Howard Day, Vulnerability Assessment Manager; and Brian Gladstone, Operational Security Manager. Attachment 13.

DoE's Evaluation And Contract Award

On December 6th, 2006 DoE notified Protection Strategies that PAI had been awarded the proposed Security System Services Contract and this at an evaluated price of $22,088,411. While Protection Strategies had received an "Excellent" technical rating, a "Significant Strength" for its proposed Program Manager, a "Strength" for its proposed Vulnerability Assessments Manager, a "Strength" for its proposed Operational Security Manager, and a "Strength" for its proposed Site Safeguards and Security Plan Manager, Protection Strategies' Competitive Proposal was not much more highly rated than the PAI Competitive Proposal. Attachment 14.

Enclosed with this "Dear John" letter from DoE was a 20-page evaluation of Protection Strategies' Competitive Proposal. The first 8 pages of this evaluation are devoted to a comprehensive review and analysis of the Key Persons offered by Protection Strategies. Attachment 14, Evaluation, at pages 1 through 8 of 20.

In her Source Selection Statement, DoE's Source Selection Authority explains that she "could not find one Offeror as clearly standing above another Offeror," and she concluded that the Offerors' "technical proposals are essentially equivalent." Thus she found that PAI's Competitive Proposal "represents the best value to the Government." Attachment 3, page 6 of 7.

**Protected Information Has Been Redacted**

On January 30th, 2007 Protection Strategies received an oral debriefing provided in accordance with 41 U.S.C. § 253b(e)(1).

PAI'S CONTRACT PERFORMANCE

The proposed Security System Services Contract was awarded to PAI on December 6th, 2006 and the 3-week transition period began on that day. The Security System Services Contract requires PAI's full performance after December 31st, 2006. Attachment 15, page 2 of 6. But PAI has not delivered onsite any one of the Key Persons promised in PAI's Competitive Proposal.

PAI proposed Kevin Klingenberg as Project Manager but Kevin Klingenberg declined this employment on December 7th, 2006. Attachment 15, page 2 of 6. And there is more to this story.

In mid-2005 Kevin Klingenberg provided PAI his resume and his signed letter of commitment to accept employment as Project Manager if PAI were awarded the Security System Services Contract. But the following year Kevin Klingenberg accepted employment from Wackenhut Services, Incorporated, the large business security support services Contractor at the Nevada Site Office and at the Nevada Test Site. Attachment 16, page 2 of 4.

Kevin Klingenberg called PAI in the summer of 2006 and requested that he be released from his letter of commitment as he was no longer interested in working as the Project Manager for PAI. PAI agreed. Nonetheless, with Kevin Klingenberg's knowledge, PAI continued to use in its Competitive Proposal Kevin Klingenberg's resume and signed letter of commitment to accept employment as PAI's Project Manager. Upon award of the Security System Services Contract to PAI on December

**Protected Information Has Been Redacted**

6th, 2006 PAI again offered Kevin Klingenberg the Project Manager position. And again Kevin Klingenberg declined to leave his employment with Wackenhut Services, Incorporated. Attachment 16, pages 2-3 of 4.

On December 11th, 2006 Wayne Morris, who had been proposed by PAI as Operational Security Manager, accepted instead a position as PAI's Project Manager. This left the Operational Security Manager position vacant. Attachment 15, page 3 of 6; Transcript of Telephone Conference, February 27th, 2007, at 6. And having failed to deliver the promised Vulnerability Assessment Manager, PAI is now proposing to fill this Key Person position on a part-time basis. *Id.*, at 7.

PROTECTION STRATEGIES' KEY PERSONNEL

Bruce Rogers is available immediately for employment as Protection Strategies' Project Manager for the Security System Services Contract. Attachment 17, page 7 of 9. Howard Day is available immediately for employment as Protection Strategies' Vulnerability Assessment Manager for the Security System Services Contract. Attachment 18, page 1 of 4. Brian Gladstone is available immediately for employment as Protection Strategies' Operational Security Manager for the Security System Services Contract. Attachment 19, page 5 of 6. Robert Leonard was available for employment as Protection Strategies' Site Safeguards and Security Plan Manager for the Security System Services Contract through February 16th, 2007. But shortly after February 15th, 2007 when a DoE Contracting Officer publicly announced that the period in which a Post-Award Procurement Protest could be filed be-

**Protected Information Has Been Redacted**

fore the United States Government Accountability Office had expired, Robert Leonard accepted another position, and he has committed to that position for at least one year. Attachment 20, page 2 of 2; Attachment 15, pages 4 through 5 of 6.

## ARGUMENT

### I. Protection Strategies is Entitled to Presume That DoE's Evaluation of PAI's Proposed Key Personnel Was Thorough And Complete.

There is a strong presumption in this Court that actions of Government employees are regular, that Source Selection Decisions are made in good faith, and that duties are discharged according to established standards—here the duty to evaluate Competitive Proposals consistently, as is required by *Seattle Security Services, Inc. v. United States*, 45 Fed. Cl. 560, 569-70 (1999).

It is clear to Protection Strategies that DoE's evaluation of the Key Personnel proposed by Protection Strategies was comprehensive and that the resumes, and letters of commitment, of these Key Persons were looked at, and analyzed, in great detail. So it must have been that the resumes, and letters of commitment, of the Key Persons proposed by PAI received the same level of scrutiny and analysis. *Microdyne Outsourcing, Inc. v. United States*, 72 Fed. Cl. 694, 704 (2006).

From this presumption of regularity, Protection Strategies is entitled to assume: (1) that in PAI's Competitive Proposal PAI submitted resumes and letters of commitment from Key Persons, (2) that PAI represented in its Competitive Proposal that it would deliver these proposed

Key Persons onsite at the conclusion of the transition period, and (3) that DoE relied on these representations from PAI in evaluating this Competitive Proposal, just as DoE obviously relied on the same sort of representations from Protection Strategies.

And it is also now clear that PAI has not delivered any one of the Key Persons promised in PAI's Competitive Proposal for performance of the Security System Services Contract.

What of it?

These assumptions, and the fact of PAI's non-delivery of the Key Persons promised in PAI's Competitive Proposal, establish 3 of the 4 elements required to prove an unlawful bait-and-switch. *E.g., Orion International Technologies v. United States*, 66 Fed. Cl. 569, 573 n.5 (2005); *Consolidated Engineering Services, Inc. v. United States*, 64 Fed. Cl. 617, 632-33 (2005).

**II. PAI Has Knowingly Proposed A Key Person That Would Not Be Available to Perform the Security System Services Contract, And Doing So, PAI Has Engaged In An Unlawful Bait-And-Switch.**

When Kevin Klingenberg called PAI in the summer of 2006 and requested that he be released from his letter of commitment, PAI could no longer lawfully use Kevin Klingenberg's resume and letter of commitment in PAI's Competitive Proposal. But this is just what PAI did. And PAI did so knowingly.

A misrepresentation of this sort is relied upon by the United States Court of Appeals for the Federal Circuit when it approves the General Services Administration Board of Contract Appeals' find-

**Protected Information Has Been Redacted**

ing of an "intended 'bait and switch.'" *Planning Research Corporation v. United States*, 971 F.2d 736, 740 (1992).

Just so here!

Also for consideration is the Federal Circuit's approval of the Comptroller General's view of the consequences of such a bait-and-switch:

> We believe that the submission of a misstatement, as made in the instant procurement, which materially influences consideration of a proposal should disqualify the proposal. The integrity of the system demands no less. Any further consideration of the proposal in these circumstances would provoke suspicion and mistrust and reduce confidence in the competitive procurement system.

*Id.*, at 741, citing *In re Informatics, Inc.*, B-188566, 57 Comp. Gen. 217, 225 (1978).

## CONCLUSION

PAI is perpetrating a continuing fraud on the United States. For all of the reasons set forth in the foregoing Brief in Support of Plaintiff's Motion for a Preliminary Injunction, Protection Strategies respectfully requests that the Court enter a Preliminary Injunction enjoining DoE from accepting further performances from PAI on the Security System Services Contract.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

**Protected Information Has Been Redacted**

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135
March 7th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Protection Strategies, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Wednesday, March 7th, 2007 a true and complete copy of this Plaintiff's Brief in Support of Plaintiff's Motion for a Preliminary Injunction was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

William Porter Rayel, Esq.

Electronic Mail: William.Rayel@usdoj.gov

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

**Protected Information Has Been Redacted**